## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

MARQUISE FIGURES,

    Petitioner,

    v.

WARDEN S. BROWN,

    Respondent.

Civil Action No.:  MJM-24-2938

### MEMORANDUM

Petitioner Marquise Figures ("Figures"), an inmate at Federal Correctional Institution ("FCI") Cumberland in Cumberland, Maryland, filed this Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241, alleging that a disciplinary charge he incurred violated his Fifth Amendment due process rights.  ECF No. 1 at 6–7.  In response to the Petition, Respondent seeks dismissal due to Figures's failure to exhaust administrative remedies and, in the alternative, because the petition is without merit.  ECF No. 7.  Figures has also filed a Motion for Injunction, ECF No. 5, which is opposed by Respondent, ECF No. 6.  Upon review of the submitted materials, the Court finds that no hearing is necessary.  *See* Rules 1(b), 8(a) *Rules Governing § 2254 Cases in the U.S. Dist. Cts.*; Loc. R. 105.6 (D. Md. 2023).  For the reasons that follow, the Petition shall be denied and dismissed, and Petition's motion shall be denied.

### I.    BACKGROUND

On December 19, 2023, Figures was found guilty by a Disciplinary Hearing Officer ("DHO") employed by the Bureau of Prisons ("BOP") to conduct administrative hearings on acts of inmate misconduct referred by the Unit Disciplinary Committee ("UDC").  ECF No. 7-1 at 2, ¶

2 (Decl. J. Booher).  In Figures's case, the hearing was conducted by Joseph Booher, who is a Case Manager at FCI-Cumberland and works as an alternate DHO.  *Id.* at ¶¶ 1, 2.

The incident that is the focus of this Petition is memorialized in Incident Report No. 3857763.  ECF No. 7-1 at 3, ¶ 4.  In that report, it is alleged by Counselor Cook that on November 13, 2023, at approximately 6:40 AM, while Cook was monitoring phone calls in the unit where Figures was housed, Figures made a phone call to another man.  *Id.* at ¶ 6(a).  At the "12-minute mark of the phone call the phone [went] silent as if someone clicks over to another phone call." *Id.*  The male with whom Figures was talking returned to the other end of the line twenty-four seconds later, at the 12:24 mark, and Figures began talking with a woman who had joined the phone call.  *Id.*  An introduction of Figures as "my brother" occurred.  *Id.*  Cook states in the report that "[b]y connecting to another phone line, Inmate Figures participates [sic] in a 3-way call which is a direct violation of the BOP policies." *Id.*  Cook characterized this action as "circumventing the phone monitoring system by participating in a 3-way call."  *Id.*, *see also* ECF No. 7-1 at 9 (Incident Report).  Figures received a copy of the Incident Report the same day it issued.  ECF No. 7-1 at 4, ¶ 7.

On November 28, 2023, Figures attended a hearing conducted by the UDC and stated that he did not intend to place a three-way call.  ECF No. 7-1 at 10; ECF No. 7-1 at 4, ¶ 8(a).  He explained he had just arrived at FCI-Cumberland on the preceding Monday and had never heard that a three-way call was inappropriate at FCI-Schuylkill, where he was confined previously.  *Id.* The UDC referred the Incident Report to the DHO for further action due to the severity of the charge.  *Id.* at ¶ 8(b).  Figures received notice of the Discipline Hearing before the DHO the same day of the UDC hearing and signed a form acknowledging his receipt of the notice.  *Id.* at ¶ 9.

On December 19, 2023, DHO Booher held the Discipline Hearing for Incident Report 3857763. ECF No. 7-1 at 4, ¶ 11. After reading Figures his rights and confirming he understood them, Figures told Booher he had no documentary evidence to present, no witnesses to call, no video evidence to present, and did not need the assistance of a staff representative at the hearing. *Id.* at 5, ¶ 11(a)(i) – (iv), *see also* ECF No. 7-1 at 12, 14. DHO Booher read the Incident Report aloud and asked Figures if the statement was true. ECF No. 7-1 at 5, ¶ 11(b). Figures responded that he did not intend to make a three-way call and again explained that he had just arrived at FCI-Cumberland from FCI-Schuylkill and had never heard that three-way calls were inappropriate when he was confined there. *Id.*

DHO Booher considered the reporting officer's description of the incident, the "TRU System documentation showing the call placed," and Figures's statements at both the UDC and DHO hearings. ECF No. 7-1 at 5, ¶ 11(b)-(c). DHO Booher found that Figures committed the charged violation: Code 297, Use of the Telephone for Abuses Other than Criminal Activity. *Id.*; *see also* ECF No. 7-1 at 16–19. DHO Booher explained that he gave greater weight to the written account of the incident than he did to Figures's claim that he did not intend to make a three-way call or that he never heard that making such a call was inappropriate. *Id.* at 6, ¶ 11(d)((i). DHO Booher noted that the inmate Admission and Orientation handbook, which all inmates receive when they arrive at a new facility, clearly states that three-way calling is prohibited. *Id.* at ¶ 11(d)(iv). The sanction imposed was the disallowance of 27 days of good conduct time and 90-days loss of telephone privileges. *Id.* at ¶ 11(f).

DHO Booher's January 7, 2024, written report was given to Figures two days later. ECF No. 7-1 at 7, ¶ 12. He was advised of his right to appeal the decision within 20 days through the BOP's administrative remedy procedure. *Id.*

According to BOP records, which Figures has not disputed, he has attempted to file three requests for administrative remedies challenging Incident Report 3857763. ECF No. 7-2 at 5, ¶ 11; 14-16. His first request (Remedy ID No. 1189680-R1) was submitted to the Mid-Atlantic Regional Office on February 7, 2024. *Id.* at 14. This request was rejected on February 9, 2024, as untimely because Figures failed to submit an appeal within 20 calendar days of receipt of the DHO report. *Id.*

On April 1, 2024, Figures resubmitted a request (Remedy ID No. 1189680-R2) for administrative remedy to the Mid-Atlantic Regional Office, again attempting to appeal the DHO decision. ECF No. 7-2 at 5, ¶ 11(b); 15. On April 2, 2024, the request was rejected as untimely with the notation that the staff memo Figures had attached in an attempt to explain the delay pertained to two different remedy requests that had been rejected as untimely. *Id.* at 15.

On April 10, 2024, Figures appealed the rejection of Remedy 1189680-R2 to the BOP Central Office. ECF No. 7-2 at 5, ¶ 11(c). The Central Office concurred with the Mid-Atlantic Regional Office's rationale for rejecting the remedy as untimely and denied the appeal on April 22, 2024. *Id.*

## II.    DISCUSSION

### A.  Section 2241 Petition

A 28 U.S.C. § 2241 petition may be filed to contest the manner in which a sentence is executed. *See In re Vial*, 115 F.3d 1192, 1194 n.5 (4th Cir. 1997) (en banc) ("[A]ttacks on the execution of a sentence are properly raised in a § 2241 petition."); *Bradshaw v. Story*, 86 F.3d 164, 166 (10th Cir. 1996) ("A petition under 28 U.S.C. § 2241 attacks the execution of a sentence rather than its validity. . ."). A showing that a prisoner is in custody in violation of the Constitution or

4

laws or treaties of the United States may support issuance of a writ of habeas corpus. *See* 28 U.S.C. § 2241(c); *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991).

Although this Court's power to entertain a petition for writ of habeas corpus under 28 U.S.C. § 2241 is broad, it "has long been established that the district court's discretion to entertain habeas petitions and exercise the power of the writ is not boundless." *Timms v. Johns*, 627 F.3d 525, 530 (4th Cir. 2010). "[P]rudential concerns, such as comity and the orderly administration of criminal justice, may require a federal court to forgo the exercise of its habeas corpus power." *Munaf v. Geren*, 553 U.S. 674, 693 (2008). Such is the case where there is a failure to exhaust administrative remedies.

Although 28 U.S.C. § 2241 does not contain a statutory exhaustion requirement, courts consistently require prisoners to exhaust their administrative remedies before seeking habeas review under § 2241. *See, e.g., Braden v. 30th Judicial Circuit Court of Kentucky*, 410 U.S. 484, 489–91 (1973) (requiring exhaustion in a § 2241 matter); *Timms v. Johns*, 627 F.3d 525, 530–33 (4th Cir. 2010) (same); *McClung v. Shearin*, 90 F. App'x. 444, 445 (4th Cir. 2004) ("Federal prisoners must exhaust their administrative remedies prior to filing § 2241 petitions."); *Miller v. Clark*, 958 F.2d 368, 1992 WL 48031, at *1 (4th Cir. 1992) (unpublished table opinion) ("Federal prisoners who wish to challenge the length of their confinement must first exhaust administrative remedies."); *Henderson v. Warden, Edgefield Satellite Prison Camp*, No. 2:09-cv-01599-RBH, 2009 WL 3317149, at *2 (D.S.C. Oct. 14, 2009) ("It is well settled that a federal prisoner is required to exhaust his administrative remedies within the Bureau of Prisons before filing an action pursuant to § 2241.").

Figures is therefore required to exhaust administrative remedies prior to filing his petition in this Court. The BOP's administrative remedy procedure provides that an inmate may appeal

the DHO's discipline hearing decision to the Regional Director within 20 calendar days of the written decision. *See* 28 C.F.R. § 542.14(a), (d)(2). If the inmate is not satisfied with the Regional Director's response, he may appeal to the Central Office. *See* 28 C.F.R. § 542.15(a). The inmate must file this final appeal within 30 calendar days of the date the Regional Director signed the response. *See id.* An inmate is not deemed to have exhausted his administrative remedies until he has filed his complaint at all levels. *See* 28 C.F.R. § 542.15(a).

Under 28 C.F.R. § 542.14(b) an extension of the time for filing the administrative remedy "may be allowed" upon a showing of a "valid reason for delay." The regulation defines "valid reason" as "a situation which prevented the inmate from submitting the request within the established time frame" and includes:

> an extended period in-transit during which the inmate was separated from documents needed to prepare the Request or Appeal; and extended period of time during which the inmate was physically incapable of preparing a Request or Appeal; an unusually long period taken for informal resolution attempts; indication by an inmate, verified by staff, that a response to the inmate's request for copies of dispositions requested under § 542.19 of this part was delayed.

*Id*.

Exhaustion requires completion of "the administrative review process in accordance with the applicable procedural rules, including deadlines." *Woodford v. Ngo*, 548 U.S. 81, 88, 93 (2006). This requirement is one of "proper exhaustion of administrative remedies, which 'means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits).'" *Woodford* 548 U.S. at 93 (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002) (emphasis in original). Absent a valid reason for failing to meet the filing deadline requirements, untimely filing of an appeal of the DHO's decision does not suffice to exhaust administrative remedies.

Figures did not comply with the time requirements for appealing the DHO's decision and did not present a valid reason for failing to do so. Failure to comply with those requirements amounts to a failure to exhaust administrative remedies. Figures offers no explanation regarding his failure to avail himself of the administrative remedy procedures, such as being prevented from doing so by BOP staff. *See Ross v. Blake*, 578 U.S. 632, 643-44 (2016) (describing three circumstances where administrative remedies are unavailable and an inmate's duty to exhaust available remedies does not come into play). The Petition must be dismissed for failure to exhaust administrative remedies.

### B. Motion for Injunction

Figures's Motion for an Injunction alleges conduct directed at other inmates and promises to provide additional evidence about a particular Case Manager if the motion is granted so that Figures will not suffer any retaliation. ECF No. 5. As a preliminary injunction temporarily affords an extraordinary remedy prior to trial, the party seeking the preliminary injunction must demonstrate: (1) by a "clear showing" that he is likely to succeed on the merits at trial; (2) he is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in his favor; and (4) an injunction is in the public interest. *See Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20-23 (2008); *Dewhurst v. Century Aluminum Co.*, 649 F.3d 287, 292-93 (4th Cir. 2011). "All four requirements must be satisfied." *Cantley v. W. Virginia Reg'l Jail & Corr. Facility Auth.*, 771 F.3d 201, 207 (4th Cir. 2014) (brackets omitted); *see also Pashby v. Delia*, 709 F.3d 307, 320 (4th Cir. 2013) (noting that Fourth Circuit's prior test of balancing the factors is no longer good law in light of *Winter*).

The allegations contained in Figures's motion do not appear to relate to the matters raised in this Petition. The single-page motion is so vague that it is difficult to discern what it is

referencing.  The motion will be denied because it fails make a clear showing that Figures is likely to succeed on the merits of the claim for relief asserted in this action.

### III.    CONCLUSION

The Petition for Writ of Habeas Corpus shall be dismissed, and the Motion for Injunctive Relief shall be denied. A separate Order will follow.


__9/24/25____                                    _____/S/_____
Date                                                         Matthew J. Maddox
                                                             United States District Judge

8